**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **WENDY LIPSCOMB,** | * |
| **Plaintiff,** | * |
| v. | * Case No.: PWG-13-2751 |
| **AARGON AGENCY, INC.** *et al.*, | * |
| **Defendants.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

After receiving multiple calls on her cell phone from Defendant Aargon Agency, Inc. ("Aargon"), in which Aargon stated that it was attempting to collect a debt, Plaintiff Wendy Lipscomb asked Aargon to stop calling her and initiated this lawsuit, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and invasion of privacy. I must determine whether to grant Defendant's pending Motion for Summary Judgment.[1] Because the material facts regarding Defendant's alleged violation of § 1692c(b) of the FDCPA are not disputed and show that Plaintiff cannot establish a prima facie case, Defendant is entitled to judgment as a matter of law on that claim. However, a genuine dispute exists as to the volume and pattern of Defendant's calls and when Plaintiff asked Defendant to stop calling, facts that are material to the remaining claims. Therefore I will deny Defendant's motion as to Plaintiff's claims for invasion of privacy and violations of the TCPA and § 1692d of the FDCPA.

---

[1] The parties have briefed the motion fully. *See* ECF Nos. 24, 24-1, 25, 31, 32 & 26. A hearing is unnecessary. *See* Loc. R. 105.6.

**I.      BACKGROUND**[2]

Aargon contacted Plaintiff repeatedly "on her cellular telephone using an automatic telephone dialing system ('ATDS') and/or by using a prerecorded or artificial message."[3] Compl. ¶¶ 12–14, ECF No. 1; *see* Def.'s Mem. 4–5. Aargon was attempting to collect a debt on behalf of George Washington University Hospital (the "Hospital"), which had retained Aargon "in connection with the collection of two accounts owed by the Plaintiff." Boyd Aff. ¶ 8, ECF No. 24-2; *see* Compl. ¶¶ 11–12. According to Plaintiff, "it was clear that Defendant was calling for someone other than Ms. Lipscomb," and she "told the Defendant on three separate occasions to stop calling her," ultimately "advis[ing] Defendant that it had the wrong number and to stop calling and placing auto-dial calls to her cell phone." Pl.'s Interrog. Resp. 13, Def.'s Mem. Ex. 2, ECF No. 24-4. Yet, in her Opposition, Plaintiff does not dispute that Defendant was trying to

---

[2] In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009).

[3] Aargon's records indicate that it also attempted to contact Plaintiff at another number, (240) 788-7993, at which it left eight prerecorded messages between July 19, 2013 and October 15, 2013. Boyd Aff. Ex. B, ECF No. 24-2. Citing the records that Aargon produced, *id.*, Plaintiff asserts that "Defendant continued calling Plaintiff on her home phone number through at least October 15, 2013," Pl.'s Opp'n 3, which suggests that (240) 788-7993 was Plaintiff's home phone number. And, in its Motion for Summary Judgment, Aargon refers to all sixteen calls. In its Reply, however, Aargon focuses on the calls to Plaintiff's cell phone only, stating that, "upon further review, it is undisputed that calls to 240-788-7993 were made to a third party's phone number as Ms. Lipscomb's responses to discovery confirm that the only phone number she has had for 4 years is her cell number of 301-312-3028." Def.'s Reply 8. It is true that Plaintiff did not list (240) 788-7993 in response to Defendant's interrogatory regarding numbers that Plaintiff had "held for the past four (4) years," for which Plaintiff only listed (301) 312-3028. Pl.'s Interrog. Resp. 3, Def.'s Mem. Ex. 2, ECF No. 24-4. Further, Plaintiff has not sought leave to file a surreply to address whether the calls to (240) 788-7993 should be considered. *See* Loc. R. 105.2(a). Moreover, the calls to (240) 788-7993 are not material to this law suit, which Plaintiff makes clear relates to the calls she received "to her cellular telephone, number (301) 312-3028." Pl.'s Interrog. Resp. 14; *see* Compl. ¶¶ 12–14.

reach her or that Defendant stated in its prerecorded messages that it was calling "for Wendy Lipscomb" in "an attempt to collect the debt." *See* Pl.'s Opp'n 2–3; Boyd Aff. ¶ 13. Feeling harassed, Plaintiff filed suit against Aargon and ten John Doe defendants, claiming that they violated the FDCPA and the TCPA, and that they are liable for the common law tort of invasion of privacy. Compl. ¶ 1.

## II.   STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* But, even if the material facts are not disputed, "summary judgment is only appropriate when the evidence 'is so one-sided that one party must prevail as a matter of law.'" *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 504 (D. Md. 2004) (quoting *Anderson*, 477 U.S. at 252).

## III.  DISCUSSION

To protect consumers from abusive debt collection practices, the FDCPA prohibits certain communications by debt collectors in relation to collecting debts.  *See, e.g.*, 15 U.S.C. §§ 1692c(b), 1692d; *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012).  To succeed on an FDCPA claim, a plaintiff must establish that "'(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'"  *Stewart*, 859 F. Supp. 2d at 759–60 (citation omitted).  Here, it is undisputed that Ms. Lipscomb was "'the object of collection activity arising from consumer debt'" and that Aargon is a debt collector.  *See id.* (citation omitted).  Thus, the issue is whether Aargon engaged in a debt collection tactic that the FDCPA prohibits.  *See id.*

Plaintiff claims that Defendants "violated 15 U.S.C. § 1692c(b) by communicating with the Plaintiff without authorization or justification."  Compl. ¶ 28.  This section of the FDCPA prohibits a debt collector from "communicat[ing], in connection with the collection of any debt, with *any person other than the consumer*, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector," unless the consumer gives prior consent directly to the debt collector.  15 U.S.C. § 1692c(b) (emphasis added).  Plaintiff's claim fails as a matter of law because § 1692c(b) pertains to communications with third parties, *see id.*, and Plaintiff is not a third party, but rather the consumer Defendant sought to contact regarding the debt, *see* Boyd Aff. ¶ 13; Pl.'s Opp'n 2–3.  Therefore, summary judgment in Defendant's favor is appropriate on this claim.  *See* Fed. R. Civ. P. 56(a).

Plaintiff also alleges that Defendants, by calling Plaintiff's cell phone to collect the debt, harassed Plaintiff in violation of 15 U.S.C. § 1692d and Maryland common law prohibiting intrusion upon seclusion. Compl. ¶¶ 29 & 40.  Section 1692d prohibits, with exceptions not relevant here, a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, such as by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," *id.* § 1692d(5).  Intrusion upon seclusion is one form of the common law tort of invasion of privacy in Maryland,[4] and it is "defined as: '[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.'" *Mitchell v. Baltimore Sun Co.*, 883 A.2d 1008, 1022 (Md. Ct. Spec. App. 2005) (quoting *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000) (citation and quotation marks omitted)).

The question at the core of these two claims is whether Defendant's calls to Plaintiff were reasonable, based on their frequency and timing.  "Whether there is actionable harassment or annoyance [for purposes of § 1692d] turns not only on the volume of calls made, but also on the pattern of calls." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004).  For example, calls placed after a debtor has asked the collector to stop calling may evidence an intent to harass. *See Finney v. MIG Capital Mgmt., Inc.*, No. 13-2778, 2014 WL 1276159, at *12 (S.D. W. Va. Mar. 27, 2014) ("[T]he fact that . . . calls were placed after Finney informed MIG that the debt was disputed and after Finney requested that all further

---

[4] The parties agree that Maryland law applies.  *See* Def.'s Mem. 9; Pl.'s Opp'n 9.

communications be directed to [her attorney] suggested [an intent to harass]," as "courts have concluded that a debt collector's failure to respect a consumer's request to cease communications concerning a debt may be indicative of intent to harass or annoy."); *Little v. Portfolio Recovery Assocs., LLC*, No. 12-2205-JTM, 2014 WL 1400660, at *3 (D. Kan. Apr. 10, 2014) ("[C]ontinuing to call after the debtor asks for such calls to stop may evidence an intent to harass . . . ."); *Conover v. BYL Coll. Servs., LLC*, No. 11-CV-6244P, 2012 WL 4363740, at *6 (W.D.N.Y. Sept. 21, 2012) ("[H]arassment may be found where a debt collector . . . continues to call after the debtor has requested that the debt collector stop calling."); *Gilroy v. Ameriquest Mortg. Co.*, 632 F. Supp. 2d 132, 136 (D.N.H. 2009) ("Intent [to harass] may . . . be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called . . . ."). Further, "[t]he reasonableness of [a] volume of calls and their pattern is a question of fact for the jury." *Akalwadi*, 336 F. Supp. 2d at 506. Likewise, for an invasion of privacy claim,

> the question of how far a creditor may go to collect his debt must be decided on the individual facts of each case, but usually on the ground of reasonableness. It is generally recognized that a creditor has a right to take reasonable measures to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy.

*Household Finance Corp. v. Bridge*, 250 A.2d 878, 884 (Md. 1969). Additionally, when a plaintiff is successful on an invasion of privacy claim against a creditor, "there is usually present a pattern of harassment on the part of the creditor, or the communication, if not of such frequency as to constitute harassment, has been of such a nature as to possess a vicious quality." *Id*. at 884.

In this regard, two material facts are disputed: how frequently Defendant called Plaintiff and whether Defendant called Plaintiff after she asked Defendant to stop. Defendant contends,

and its records show, that it called Plaintiff's cell phone eight times over forty-five days, never on the same day, never at night, and never after Plaintiff asked it to stop. Boyd Aff. Ex. B. According to Plaintiff, Defendant called her cell phone "approximately 20 to 25" times, and she "told the Defendant on three separate occasions"—on September 19, 2013 and twice before then—"to remove her cell number from its call list and to cease all calls." Pl.'s Interrog. Resp. 11 & 13. Her Responses to Defendant's Amended Interrogatories[5] are the only evidence she identifies in support of her position, but that is sufficient to create a genuine dispute of material fact.[6] *See* Fed. R. Civ. P. 56(c)(1)(A) (identifying "interrogatory answers" as "materials in the record" that can provide support for "[a] party asserting that a fact . . . is genuinely disputed"). Further, discovery is not yet complete, as the parties engaged in phased discovery and only have completed the first phase. Def.'s Mem. 2; Feb. 4, 2014 Order, ECF No. 19. Because there is a

---

[5] These interrogatory responses are unsigned by Plaintiff, which violates the requirements of Fed. R. Civ. P. 33(b)(5), but Defendant attached them to its summary judgment motion, Plaintiff relied on them in support of her opposition, and neither party objected to their use. Accordingly, the unsigned interrogatories constitute an admission by Plaintiff. Fed. R. Evid. 801(d)(2)(B). Consequently, the Court may consider them as evidence of the content and frequency of the calls. *See* Fed. R. Civ. P. 56(c)(2) (permitting a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence); Fed. R. Evid. 901(b)(1) (testimony of witness with knowledge of evidentiary item can authenticate evidence).

[6] Certainly, Plaintiff has confused some of the facts, and her credibility may be questioned. For example, as further evidence of Aargon's calls to her cell phone, Plaintiff relies on the records that Aargon produced. *See* Pl.'s Opp'n 3 (citing Boyd Aff. Ex. B). While Plaintiff insists that the records show that Aargon called her cell phone "sixteen times between 7/19/13 and 9/19/13," Pl.'s Opp'n 7, the records actually only list eight calls to Plaintiff's cell phone, the first of which was on August 5, 2013. Boyd Aff. Ex. B. And, Plaintiff claims that "it was clear that Defendant was calling for someone other than Ms. Lipscomb," and asserts that she told "Defendant that it had the wrong number," while admitting that Defendant's messages stated that it was calling "for Wendy Lipscomb." *Compare* Pl.'s Interrog. Resp. 13, *with* Pl.'s Opp'n –3. But, "weighing evidence and witnesses' credibility is a role reserved for the fact-finder, not the court at summary judgment." *MHD-Rockland, Inc. v. Aerospace Distribs., Inc.*, No. CCB-13-2442, 2014 WL 4977673, at *4 (D. Md. Oct. 1, 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

genuine dispute of material fact regarding the quantity and timing of Defendant's calls to Plaintiff's cell phone, and because the jury must determine the reasonableness of Defendant's calls as a matter of fact, summary judgment is not appropriate on these claims, based on this record. *See* Fed. R. Civ. P. 56(a); *Akalwadi*, 336 F. Supp. 2d at 506; *Household*, 250 A.2d at 884.

Moreover, this same factual dispute also underlies the resolution of Plaintiff's TCPA claim. The TCPA prohibits calls to a cell phone "using any automatic telephone dialing system" (which Defendant concedes that it did, for purposes of its summary judgment motion only,[7] Def.'s Mem. 8), unless the party being called has given "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii). Importantly, "'any telephone subscriber who releases his or her telephone number,'" such as by providing the number to a business, "'has, in effect, given prior express consent to be called by the entity to which the number was released." *Penn v. NRA Grp., LLC*, No. JKB-13-785, 2014 WL 2986787, at *1 (D. Md. July 1, 2014) (quoting Rules & Regulations Implementing the TCPA of 1991, Report & Order, 7 FCC Rcd. 8752, 8769, ¶ 30 (1992)). The undisputed evidence shows that Plaintiff executed a Patient Authorization Form (the "Authorization") in which she "consent[ed] to receiving auto-dialed and/or pre-recorded message calls to [her] cellular telephone, and to any telephone number provided by [her] to the George Washington University Hospital or its affiliates and their agents including without limitation any third party debt collectors." Boyd Aff. ¶¶ 8–9 & Ex. A, ECF No. 24-2; Pl.'s 1st Am. Resp. to Def.'s 1st Set of Requests for Admission, Resp. 2, Def.'s Mem. Ex. 1, ECF No. 24-3; Pl.'s Opp'n 2.

---

[7] Defendant cites no authority in support of its "conditional" concession. *See generally* Def.'s Mem. 8. Certainly, Defendant has knowledge whether it used an automated telephone dialing system. If not, however, it would create yet another disputed material fact making summary judgment inappropriate.

Given that Aargon was attempting to collect a debt from Plaintiff on behalf of the Hospital, Aargon as a debt collector may assert the prior express consent defense against Plaintiff's claims, based on the Authorization. *See Penn*, 2014 WL 2986787, at *1 ("'[T]he provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt . . . if the wireless number was provided by the consumer to the creditor, . . . during the transaction that resulted in the debt owed,'" and "'[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.'" (quoting Rules & Regulations Implementing the TCPA of 1991: Request of ACA Int'l for Clarification & Declaratory Ruling, Declaratory Ruling, 23 FCC Rcd. 559, 564–65 ¶¶ 9–10 (2008))); *see Mais v. Gulf Coast Collection Bureau, Inc.*, ---- F.3d ----, 2014 WL 4802457, at *5, *9–10 (11th Cir. 2014) (quoting the same and concluding that the FCC "meant to reach a wide range of creditors and collectors, including those pursuing medical debts"). Contrary to Plaintiff's belief, *see* Pl.'s Opp'n 5, it is of no moment that the contract between Aargon and the Hospital defines Aargon as an independent contractor. *See* Agr. ¶ B, Lemberg Decl. Ex. A, ECF No. 26.  First, the language of the Authorization explicitly included "any third party debt collectors." *Id.*  Second, "the FCC recently ruled 'that the TCPA does not prohibit a caller from obtaining consent through an intermediary,'" as "'consent to be called at a number in conjunction with a transaction extends to a wide range of calls "regarding" that transaction, even in at least some cases where the calls were made by a third party.'" *Mais*, 2014 WL 4802457, at *10 (quoting *In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition*, 29 FCC Rcd. 3442, 3446–47 (2014)).  Thus, Plaintiff gave prior express consent for Aargon, as a third party debt collector, to contact her regarding her debt to the Hospital. *See id.*  Nonetheless, a genuine dispute exists regarding whether

Plaintiff revoked that consent before Defendant stopped calling, with Plaintiff identifying evidence that Plaintiff asked Defendant three times to stop calling, and Defendant offering evidence that Plaintiff did not ask Defendant to stop until September 19, 2013, and that Defendant did not call after that.[8]  Therefore, Defendant's summary judgment motion is denied as to Plaintiff's TCPA claim.

### IV.     CONCLUSION

In sum, Defendant's Motion for Summary Judgment IS GRANTED IN PART AND DENIED IN PART.  Judgment is granted in Defendant's favor as to Plaintiff's claim under 15 U.S.C. § 1692c(b).  This case shall proceed as to Plaintiff's claims under 15 U.S.C. § 1692d and the TCPA and for invasion of privacy.

Counsel shall contact my chambers to schedule a telephone conference to discuss further scheduling in this case.

A separate order shall issue.

Dated: November 5, 2014                                            /S/
                                                                                    Paul W. Grimm
                                                                                    United States District Judge
lyb

---

[8] This factual dispute also raises the legal question of whether and how a debtor may revoke consent under the TCPA, a question that neither this Court nor the Fourth Circuit has addressed. The FCC, the Third Circuit, and the Eleventh Circuit, in well-reasoned opinions, have held that consent is revocable. *In re Rules & Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 15391, 15398 (Nov. 26, 2012); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255–56 (11th Cir. 2014); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270–72 (3d Cir. 2013).  Because the jury must determine when Plaintiff first asked Defendant to stop calling her cell phone, and a finding that Plaintiff's request corresponded with Defendant's last call will obviate the issue regarding revocation, I will not resolve this legal issue at this time.